# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 3, 2015 Session

## CHARTIS CASUALTY COMPANY ET AL. v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee Claims Commission**
**No. X2012529     Robert N. Hibbett, Commissioner**

_____

**No. M2013-00885-SC-R11-CV – Filed October 2, 2015**
_____


## ACE AMERICAN INSURANCE COMPANY ET AL. v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee Claims Commission**
**No. X20120724     Robert N. Hibbett, Commissioner**

_____

**No. M2013-00930-SC-R11-CV- Filed October 2, 2015**
_____


## OLD REPUBLIC INSURANCE COMPANY ET AL. v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee Claims Commission**
**Nos. X03152011, X20120308     Robert N. Hibbett, Commissioner**

_____

**No. M2013-00904-SC-R11-CV – Filed October 2, 2015**
_____

**VALLEY FORGE INSURANCE COMPANY v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee Claims Commission**
**No. X20111118     Robert N. Hibbett, Commissioner**

_____

**No. M2013-00897-SC-R11-CV – Filed October 2, 2015**
_____


**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Appeals**
**Tennessee Claims Commission**
**No. X07092010     Robert N. Hibbett, Commissioner**

_____

**No. M2013-00898-SC-R11-CV – Filed October 2, 2015**
_____


Five groups of Pennsylvania-domiciled insurance companies filed complaints in the Tennessee Claims Commission seeking a refund of retaliatory taxes paid under protest. The Commissioner entered judgments denying the requested refunds, and the insurance companies appealed. The Court of Appeals affirmed the judgments. We granted permission to appeal to consider whether certain Pennsylvania workers' compensation assessments result in a financial burden on Tennessee insurance companies doing business in Pennsylvania, thereby triggering the imposition of retaliatory taxes against the Pennsylvania insurance companies doing business in Tennessee. Because the workers' compensation assessments must be paid by employer–policyholders in conjunction with their premium payments, the administrative task of collecting and remitting those payments does not qualify as a burden on the insurance companies for purposes of the retaliatory tax. The judgments of the Court of Appeals are, therefore, reversed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the Court of Appeals Reversed**

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Bradley A. Lampley and Tricia Thor Olson, Nashville, Tennessee; and Peter D. Edgerton, Lisa E. Schwartz, William M. Sneed, and Tracy D. Williams, Pro Hac Vice, Chicago, Illinois; for the appellants, Chartis Casualty Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company.

Bradley A. Lampley and Tricia Thor Olson, Nashville, Tennessee, for the appellants, Valley Forge Insurance Company and American Casualty Company of Reading, Pennsylvania.

Brett R. Carter and Patricia Head Moskal, Nashville, Tennessee, for the appellants, ACE Property and Casualty Insurance Company, ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Indemnity Insurance Company of North America, Old Republic Insurance Company, Pennsylvania Manufacturers' Association Insurance Company, Manufacturers Alliance Insurance Company, and Pennsylvania Manufacturers Indemnity Company.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Jonathan N. Wike, Senior Counsel, for the appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

Five separate groups of Pennsylvania-domiciled insurance companies, listed below and collectively referred to as the "Claimants," are authorized to provide workers' compensation coverage in Tennessee: (1) Chartis Casualty Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, and New Hampshire Insurance Company; (2) ACE American Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, and Indemnity Insurance Company of North America; (3) Old Republic Insurance Company, Pennsylvania Manufacturers' Association Insurance Company, Manufacturers Alliance Insurance Company, and Pennsylvania Manufacturers Indemnity Company; (4) Valley Forge Insurance Company; and (5) American Casualty Company of Reading, Pennsylvania. By letter dated November 7, 2008, the State of Tennessee, through the Tennessee Department of Commerce and Insurance (the "State"), notified the Claimants of its intention to perform audits, "mainly retaliatory in nature," for the years 2005, 2006, and 2007. See Tenn. Code Ann. § 56-4-218 (2008) (authorizing the State, under certain circumstances, to impose retaliatory taxes on foreign insurance companies). Later, as a

result of the audit, the Claimants were required to recalculate their Tennessee taxes to include certain Pennsylvania workers' compensation charges, file amended tax returns, and remit payment of the additional taxes totaling more than $16 million. The Claimants disputed the applicability of Tennessee's retaliatory tax statute to the Pennsylvania workers' compensation charges but ultimately paid the disputed taxes under protest.

Each of the Claimants filed a complaint with the Tennessee Claims Commission (the "Commissioner") seeking a refund of the retaliatory taxes paid under protest. Because of the common questions raised by the Claimants' refund requests, the five cases proceeded jointly before the Commissioner.[1] The Claimants and the State filed cross-motions for summary judgment and a hearing took place on January 22, 2013. On March 8, 2013, the Commissioner issued five identical judgments, each granting the State's motions for summary judgment and denying the summary judgment motions filed by the Claimants. The Court of Appeals affirmed the rulings. Chartis Cas. Co. v. State, No. M2013-00885-COA-R3-CV, 2014 WL 3807938, at *1 (Tenn. Ct. App. July 31, 2014); ACE Am. Ins. Co. v. State, No. M2013-00930-COA-R3-CV, 2014 WL 3807827, at *1 (Tenn. Ct. App. July 31, 2014); Old Republic Ins. Co. v. State, No. M2013-00904-COA-R3-CV, 2014 WL 3805830, at *1 (Tenn. Ct. App. July 31, 2014); Valley Forge Ins. Co. v. State, No. M2013-00897-COA-R3-CV, 2014 WL 3808910, at *1 (Tenn. Ct. App. July 31, 2014); Am. Cas. Co. of Reading, Pa. v. State, No. M2013-00898-COA-R3-CV, 2014 WL 3808909, at *1 (Tenn. Ct. App. July 31, 2014).[2] This Court granted the applications for permission to appeal and consolidated the five cases for oral argument.[3]

## II. Standard of Review

Because the grant or denial of a motion for summary judgment is purely a matter of law, our standard of review is de novo with no presumption of correctness. Kinsler v. Berkline, LLC, 320 S.W.3d 796, 799 (Tenn. 2010). In consequence, "our task is

---

[1] At approximately the same time, several New York-domiciled insurance companies filed similar tax refund claims with the Commissioner. Although the New York and Pennsylvania cases proceeded simultaneously before the Commissioner and the Court of Appeals, the New York cases were never consolidated with the Pennsylvania cases.

[2] The Court of Appeals issued five separate but substantively identical opinions, one for each of the five groups of Pennsylvania insurance companies. On the same day, the Court of Appeals also issued its decisions in related appeals by the New York insurance companies. See Chartis Cas. Co., 2014 WL 3807938, at *1-2 & nn.1-3.

[3] On the same day that we granted review in these Pennsylvania cases, we denied review in the New York cases. Although the appeal by the New York insurance companies raised a nearly identical issue, the Pennsylvania cases are premised upon an analysis of three Pennsylvania workers' compensation statutes, which differ significantly from their New York counterparts.

confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met." Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because there are no material facts in dispute between the Claimants and the State,[4] the core issue is whether the Commissioner and the Court of Appeals have properly applied the Tennessee retaliatory tax statute under the circumstances presented in the case before us. "Statutory interpretation, of course, presents a question of law and our review is de novo with no presumption of correctness." Kiser v. Wolfe, 353 S.W.3d 741, 745 (Tenn. 2011) (citing Carter v. Quality Outdoor Prods., Inc., 303 S.W.3d 265, 267 (Tenn. 2010)).

### III. Analysis
### A. Retaliatory Tax Statutes

At issue is the scope and applicability of Tennessee's retaliatory tax statute, which provides, in pertinent part, as follows:

> When, by the laws of any other state or foreign country, any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in the other state or foreign country, or upon their agents in the other state or foreign country, that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of the other state or foreign country doing business in this state, or that might seek to do business in this state, or upon their agents in the state, so long as the laws continue in force, the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon the companies of the other state or foreign country doing business in this state, or upon their agents in this state. . . . This section shall be applied on a retaliatory basis without consideration of any reciprocity an insurance company domiciled in another state or foreign country may claim due to lower premium or income or other taxes, or lower fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions that are imposed upon the

---

[4] The only facts in dispute are the amounts of the retaliatory taxes potentially owed by the Claimants. This factual dispute has no bearing on our resolution of this appeal.

insurance companies of other states or foreign countries doing business in this state.

Tenn. Code Ann. § 56-4-218(a). "The legislative purpose of the retaliatory insurance tax statute . . . is to protect Tennessee insurance companies by encouraging foreign jurisdictions not to impose heavier burdens on Tennessee companies than Tennessee imposes upon their companies who come here to do business." Republic Ins. Co. v. Oakley, 637 S.W.2d 448, 451 (Tenn. 1982).[5] In consequence, the dispositive question in the case before us is whether any taxes, fees, charges, fines, penalties, licenses, deposit requirements or other obligations, prohibitions, or restrictions are imposed upon Tennessee insurance companies doing business in Pennsylvania that are in excess of the taxes, fees, charges, fines, penalties, licenses, deposit requirements or other obligations, prohibitions, or restrictions imposed upon Pennsylvania insurance companies doing business in Tennessee.

### B. Pennsylvania Workers' Compensation Statutes

In this instance, "the laws of [the] other state," Tenn. Code Ann. § 56-4-218(a), are three Pennsylvania workers' compensation statutes known as the Workmen's Compensation Administration Fund, 77 Pa. Stat. Ann. § 1000.2 (West 2002); the Subsequent Injury Fund, 77 Pa. Stat. Ann. § 517 (West 2002); and the Workmen's Compensation Supersedeas Fund, 77 Pa. Stat. Ann. § 999 (West 2002). The State contends that the Pennsylvania statutes impose a burden on Tennessee insurance companies doing business in Pennsylvania that is higher than the reciprocal burden imposed by Tennessee on Pennsylvania insurance companies doing business in our state. The Claimants, on the other hand, assert that the Pennsylvania statutes do not impose any burden, other than an administrative tax-collection burden, upon the insurance companies. Initially, to determine whether Pennsylvania imposes a burden on Tennessee insurance companies doing business in that state, we must look to the plain language of their statutes. Mansell v. Bridgestone Firestone N. Am. Tire, LLC, 417 S.W.3d 393, 400 (Tenn. 2013) ("When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language.").

---

[5] Every state except Hawaii has adopted retaliatory tax statutes, which have resulted in approximately equal tax burdens on insurance companies across the country. First Am. Title Ins. Co. v. Combs, 258 S.W.3d 627, 630 (Tex. 2008). This national system of retaliatory taxation has generally been supported by insurance companies and state governments alike, even though retaliatory tax statutes are facially discriminatory. See Carl R. Erdmann & Robert F. Montellione, Maximizing Tax Incentive Benefits in the Insurance Industry, 2000 J. Multistate Tax'n & Incentives 1, 2. Over the years, retaliatory tax statutes have survived constitutional challenges on the narrow basis that their "principal purpose . . . is to promote the interstate business of domestic insurers by deterring other [s]tates from enacting discriminatory or excessive taxes." W. & S. Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 668 (1981).

The Workmen's Compensation Administration Fund has been "maintained by no more than one (1) annual assessment payable in any calendar year **on insurers and self-insurers**." 77 Pa. Stat. Ann. § 1000.2(b) (emphasis added). Likewise, the Subsequent Injury Fund has been "maintained at one hundred thousand dollars ($100,000) **by assessing each insurer** a proportion of the amount expended from the fund during the preceding year." 77 Pa. Stat. Ann. § 517 (emphasis added). Finally, the Workmen's Compensation Supersedeas Fund also has been "maintained by **annual assessments on insurers and self-insurers**." 77 Pa. Stat. Ann. § 999(b) (emphasis added). The Claimants do not dispute that each of these statutes, by assessing an annual payment from an "insurer" or "self-insurer," imposes a financial burden directly upon insurance companies doing business in Pennsylvania. We agree that the plain language of these statutes supports such an interpretation, which is bolstered by certain provisions that require the insurance companies to pay the Pennsylvania Department of Labor and Industry even if the amount of an assessment is disputed. 77 Pa. Stat. Ann. §§ 999(b), 1000.2(c). Moreover, particularly as to the Workmen's Compensation Administration Fund, the failure to pay the assessment may result in "revocation or suspension of the [insurance] company's license to transact business in [Pennsylvania]." 77 Pa. Stat. Ann. § 1000.2(c).

Notwithstanding the plain language of the three statutes at issue, however, the Claimants contend that a more recent statute, 71 Pa. Cons. Stat. Ann. § 578 (West 2012), effectuated a change in the law such that the assessments collected by the Pennsylvania Department of Labor and Industry are no longer imposed directly upon insurance companies operating in Pennsylvania. Section 578, which was passed by the Pennsylvania General Assembly in 1997, provides in its entirety as follows:

> Effective July 1, 1998, the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation Supersedeas Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338),[ 77 Pa. Stat. Ann. §§ 517, 999, 1000.2,] known as the "Workers' Compensation Act," **shall no longer be imposed on insurers but shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labor and Industry**.

71 Pa. Cons. Stat. Ann. § 578 (emphasis added) (footnote omitted). By the plain language of section 578, the workers' compensation assessments at issue are no longer to be paid by insurance companies doing business in Pennsylvania; instead, section 578 requires the assessments to be "imposed, collected[,] and remitted **through** insurers in

accordance with regulations promulgated by the Department of Labor and Industry." (Emphasis added.)

It is evident that the plain language of section 578 contradicts the plain language of the Workmen's Compensation Administration Fund, the Subsequent Injury Fund, and the Supersedeas Fund. The Claimants contend, however, that those three statutes have been expressly repealed by virtue of the bill enacting section 578, which provides that the Pennsylvania Workers' Compensation Act has been repealed to the extent that "it is inconsistent with section [578]." 1997 Pa. Laws 530, 548. We must agree. Moreover, even without considering the repeal provision, another canon of statutory construction aids our analysis—that is, "[w]hen construing a more recent statute in conjunction with pre-existing legislation, 'we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments.'" Davis v. State, 313 S.W.3d 751, 762 (Tenn. 2010) (quoting Hicks v. State, 945 S.W.2d 706, 707 (Tenn. 1997)); see also Mishoe v. Erie Ins. Co., 824 A.2d 1153, 1168 (Pa. 2003) ("[The] General Assembly [is] presumed to know the existing law when enacting a statute."). Thus, when there is a conflict between statutes which were enacted at different times, "the more specific and more recently enacted statutory provision" generally controls. Lovlace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013); see also Commonwealth v. Menezes, 871 A.2d 204, 210 (Pa. 2005) (holding that a more recently enacted, specific statute controlled over a prior, more general statute).

As the more recently enacted statute, which makes specific references to the earlier workers' compensation statutes, section 578 evinces a legislative intent to change how the workers' compensation assessments are to be paid to the Pennsylvania Department of Labor and Industry. Although repeal by implication is not favored under either Tennessee or Pennsylvania law, this doctrine does apply when a more recent, more specific statute is irreconcilable with a former statute on the same subject. See Pa. Dep't of Educ. v. First Sch., 370 A.2d 702, 708 (Pa. 1977); Hayes v. Gibson Cnty., 288 S.W.3d 334, 337-38 (Tenn. 2009). The plain language of section 578, stating that the assessments "shall **no longer** be imposed on insurers," further supports our conclusion that the three workers' compensation statutes have been repealed insofar as they are inconsistent with section 578. (Emphasis added.) For all of these reasons, we conclude that we must focus our analysis on section 578.

## C. Pennsylvania Administrative Regulations

The question we must now answer is whether the terms of section 578, requiring insurance companies to collect the workers' compensation assessments from their policyholders and remit the payments to the Pennsylvania Department of Labor and Industry, qualify as

any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions . . . imposed upon Tennessee insurance companies doing business in [Pennsylvania] . . . that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of [Pennsylvania] doing business in [Tennessee].

Tenn. Code Ann. § 56-4-218(a). If Tennessee insurance companies doing business in Pennsylvania are burdened by the application of section 578 in a way that exceeds the burdens imposed upon Pennsylvania insurance companies doing business in Tennessee, then we must uphold our Commissioner's decision to impose a retaliatory tax against the Claimants. If, however, section 578 does not impose a higher burden (or any burden) upon Tennessee insurance companies doing business in Pennsylvania, then it would not be proper to impose a retaliatory tax under these circumstances.

Importantly, section 578 provides that the three workers' compensation assessments "shall be imposed, collected and remitted through insurers **in accordance with regulations promulgated by the Department of Labor and Industry**." (Emphasis added.) In response to this directive, the Pennsylvania Department of Labor and Industry, through its Bureau of Workers' Compensation, adopted several amendments to the Pennsylvania Code, which were "designed to implement section [578]," "to clarify and provide detailed guidance for the uniform application of section [578]," and to "refin[e] existing procedures for assessment collection and calculation." 29 Pa. Bull. 2649 (May 15, 1999), available at http://www.pabulletin.com/secure/data/vol29/29-20/29_20_p2.pdf.[6] In particular, the amendments to the Code were "designed to allow the imposition, collection and remittance of assessments 'through' insurers on behalf of employers, rather than the imposition of assessments 'on' insurers." 29 Pa. Bull. 2649. Prior to adopting the amendments, the Pennsylvania Department of Labor and Industry solicited comments from "all interested parties . . . regarding the proposed rulemaking." Id. After the close

---

[6] The Pennsylvania Bulletin is the official register for Pennsylvania's compilation of administrative regulations, which is known as the Pennsylvania Code. See "The Pennsylvania Bulletin," http://www.pabulletin.com/index.asp (last visited July 27, 2015). The Pennsylvania Code—an administrative code of regulations, not a legislative code of statutes—should not be confused with Pennsylvania's statutory compilations, which include the Pennsylvania Statutes Annotated and Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated. The Bluebook: A Uniform System of Citation 263 tbl. T.1 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010); see also "The Pennsylvania Code," http://www.pacode.com (last visited July 27, 2015) ("No statutes or acts will be found at this website.").

of the comment period, the Department addressed each of the concerns raised by the interested parties and provided notice of "final rulemaking." Id.

The final rules and regulations adopted by the Department were published within Chapter 121 of Title 34 of the Pennsylvania Code. See 34 Pa. Code §§ 121.1, 121.22, 121.23, 121.31–.35. Three of the existing regulations, each of which relates to the Workmen's Compensation Administration Fund, the Subsequent Injury Fund, or the Supersedeas Fund, were amended to provide that "[i]nsured **employers** shall remit assessment amounts **through** their insurance carriers, according to procedures defined by the approved rating organization and approved by the Insurance Commissioner." 34 Pa. Code §§ 121.22(d), 121.23(c), 121.31(e) (emphasis added).[7] In response to concerns submitted by two of these "approved rating organization[s]" during the comment period, the Department issued the following statement along with its publication of the final rules:

> Of course, lapses in policies and variations among insurance carriers['] business practices make adherence to an exact collection [amount] administratively burdensome, if not impossible. **In keeping with the intent of [section 578], the Department's use of the term "collect" was designed to establish that assessments are to be imposed, collected and remitted through insurers. The Department did not intend to bind insurers to an impossible task.** Therefore, the Department has incorporated the suggestions of the commentators and amended these sections to clarify that insurance carriers shall remit assessment amounts to the Department according to the appropriate formulas. **The Department believes that §§ 121.22(d), 121.23(c), 121.31([e]) and 121.33(b)(3) sufficiently establish that assessments shall be imposed, collected and remitted through insurers.**

29 Pa. Bull. 2650 (May 15, 1999) (emphasis added).

In addition to the amendments made to existing regulations, a new catch-all regulation was added to specify the manner of the "[c]ollection of special funds assessments"[8] as follows:

---

[7] The regulations also specify that "[s]elf-insured employers . . . shall pay assessments directly to the Bureau." 34 Pa. Code §§ 121.22(e), 121.23(d), 121.31(f).

[8] The Pennsylvania Code defines "special funds" as the "[f]unds maintained under sections 306.2, 443 and 446 of the [Workers' Compensation] [A]ct (77 P. S. §§ 517, 999 and 1000.2)," which are the Workmen's Compensation Administration Fund, the Subsequent Injury Fund, and the Supersedeas Fund. 34 Pa. Code § 121.1.

(a) The Bureau will collect assessments for the special funds by calculating the total amount of the following:

> (1) What each self-insured employer is liable for paying to the Bureau.
>
> (2) What each insurance carrier is responsible for collecting from insured employers and remitting to the Bureau.

(b) Assessments for the special funds will be imposed, collected and remitted as follows:

> (1) The Bureau will transmit to each insurance carrier and self-insured employer a notice of assessment amount to be collected, which will specify the amount calculated under subsection (a) and the date on which the amount is due.
>
> (2) Each self-insured employer shall timely remit to the Bureau the amount calculated under subsection (a)(1).
>
> (3) **Each insurance carrier shall collect payment for assessments from insured employers** according to the procedures defined by the approved rating organization and approved by the Insurance Commissioner and timely remit payment to the Bureau.
>
> (4) **The failure of an insurance carrier to receive payment from an insured employer does not limit an insurance carrier's responsibility to collect and timely remit to the Bureau the total amount calculated under subsection (a)(2).**

34 Pa. Code § 121.33 (emphasis added). Another proposed addition to the regulations would have provided that "[o]bjection to assessment does not relieve an insurer of its obligation to promptly **pay** assessment amounts imposed under the [Act]." 29 Pa. Bull. 2650 (emphasis added) (second alteration in original). This provision, however, was omitted from the final regulations based upon concerns raised during the comment period. Id. Finally, in response to concerns "that the amendments [would] not adequately protect insurers from taxes which they may be required to pay in other states," the Department expressed its "belief that it ha[d] adequately responded to the needs of [insurance companies] in proposing and adopting these amendments" to the Pennsylvania Code, thereby effectuating the legislative purpose of section 578—that is, for the three

workers' compensation assessments at issue in this case to be **collected and remitted through** insurance companies rather than **imposed on** the insurance companies. Id.

### D. Effect of Pennsylvania Statutes and Administrative Regulations

In our view, the language of section 578 and the corresponding Pennsylvania Code regulations was clearly designed to avoid retaliatory taxes that might be calculated by other states based upon the assessments collected to fund Pennsylvania's workers' compensation system. The real issue, therefore, is whether the laws of Pennsylvania have actually accomplished that purpose. As indicated, the Claimants contend that section 578 and its corresponding administrative regulations have effectively removed any requirement that insurance companies pay the workers' compensation assessments, thereby removing any financial burden from being imposed upon the insurance companies. The State, on the other hand, insists that the financial burden of paying these assessments remains on the insurance companies despite Pennsylvania's clever attempt to disguise the role of the insurance companies as a mere conduit for payments made by their policyholders. In its brief on appeal to this Court, the State framed its argument as follows:

> In 1998, Pennsylvania enacted [section 578,] declaring that [the three Workers' Compensation assessments] were no longer imposed on insurers but instead were to be collected "through" those companies. **But the fact of the matter is that the new statute changed nothing in Pennsylvania and repealed none of the previous scheme. Insurers remain liable for these obligations, whether they collect them from policyholders or not.** Pennsylvania has engaged in a subterfuge to protect its domestic insurance companies by pretending to have a lower premium tax rate when, in fact, the obligations that it imposes on and collects from insurance companies are actually significantly higher than those imposed by Tennessee.

(Emphasis added.) In support of its position, the State relies primarily upon the language of the original statutes governing the Workers' Compensation Administration Fund, the Supersedeas Fund, and the Subsequent Injury Fund—each of which we have determined to have been repealed insofar as in conflict with section 578—as well as the newly added section 121.33(b)(4) in the Pennsylvania Code, which provides that "[t]he failure of an insurance carrier to receive payment from an insured employer does not limit an insurance carrier's responsibility to collect and timely remit to the Bureau the total amount calculated under subsection (a)(2)."

In response, the Claimants have summarized their position as follows:

None of the State's arguments can obscure the following: (1) Section 578 changed Pennsylvania law and, since 1998, provides that the [three Workers' Compensation assessments] are no longer imposed upon insurers; (2) Section 578, together with the Pennsylvania regulations promulgated and adopted after passage of Section 578, establish the process by which the legal obligation of **payment** of the [three Workers' Compensation assessments] is imposed upon policyholders and the responsibility for **collection** of the [three Workers' Compensation assessments] is on the insurers; (3) the collection responsibility is mandatory and insurers have no discretion as to whether and what extent to collect the [three Workers' Compensation assessments] from policyholders; and (4) **the payment obligation for the [three Workers' Compensation assessments] is not shifted to insurers, in the supposed event of nonpayment by a policyholder, because Pennsylvania law requires employers to carry workers' compensation insurance, which necessarily requires policyholders to pay their premiums and policyholder surcharges to maintain the legally-required coverage.**

(Third emphasis added.) In addition, the Claimants have provided supplemental authority in the form of an "Opinion and Declaratory Order" issued by the Pennsylvania Secretary of Labor and Industry.[9] The Secretary explained the effect of section 578 and regulation 121.33(b)(4) as follows:

> [I]t could not be clearer that the General Assembly in 1997 intended [section 578] to make a structural alteration to the various surcharges imposed by the Workers' Compensation Act.
>
> . . . .
>
> Though 34 Pa. Code § 121.33(b)(4) provides that "[t]he failure of any insurance carrier to receive payment from an insured employer does not limit an insurance carrier's responsibility to collect and timely remit to the

---

[9] Tennessee Rule of Appellate Procedure 27(d) permits the filing of "pertinent and significant authorities . . . after [a] party's brief has been filed, or after oral argument but before decision." The State urges this Court to reject the Claimants' submission of the Declaratory Order as "a belated attempt to supplement the appellate record[, which is] of questionable propriety." While we consider the Declaratory Order of the Secretary to be persuasive, we agree with the State that the opinion "adds little, if anything, to the arguments already made by [the Claimants]." In consequence, while we view the Declaratory Order as supportive of our interpretation of the relevant statutes and regulations, the opinion of the Secretary is neither necessary to nor dispositive of this case.

- 13 -

Bureau the total amount calculated under subsection (a)(2)," subsection (a)(2) reinforces the prime legislative directive of section [578] that insurers are to **collect** surcharges from insured employers. **The regulation in no way imposes on insurers, directly or indirectly, the liability to pay the surcharges**.

. . . [The] regulations impose on employers alone the liability to **pay** surcharges in the first instance.

ACE Am. Ins. Co., Docket No. 001-DLI-2014, slip op. at 4-5 (Pa. Dep't of Labor & Indus. Oct. 20, 2014) (Op. & Declaratory Order) (second emphasis added) (fourth alteration in original). In conclusion, the Secretary declared "that [section 578] requires that the surcharges established to support [the three Workers' Compensation funds] are imposed solely on employers. **No liability to pay the surcharges is imposed on insurers**." Id. at 6 (emphasis added).

After our extensive review of the statutory language, the implementing regulations, and the arguments presented by the Claimants and the State as to the practical effect of these statutes and regulations, we conclude that the Pennsylvania Workers' Compensation Act, as amended by section 578, does not impose a direct financial burden upon insurance companies doing business in that state. The Court of Appeals, in reaching the opposite conclusion, erred in two important respects. First, the Court of Appeals relied upon "numerous sections [of the Pennsylvania Workers' Compensation statutes] that continue to impose the assessments on the insurers, not the policyholders." Chartis Cas. Co., 2014 WL 3807938, at *5 (citing 77 Pa. Stat. Ann. §§ 517, 999, 1000.2(b)). As we have explained, each of those sections was repealed by the enactment of section 578, which states that the three workers' compensation assessments "shall **no longer** be imposed on insurers." 71 Pa. Cons. Stat. Ann. § 578. While we do not fault our intermediate appellate court for overlooking the doctrine of express repeal by virtue of 1997 Pa. Laws 530,[10] the prior workers' compensation statutes were clearly repealed by implication when section 578 became effective in 1998.

Second, the Court of Appeals erred by concluding that regulation 121.33(b)(4), which the court incorrectly cited as a statute, "makes clear the fact that the insurance companies, not the insured employers, are ultimately responsible for the surcharges at issue." Chartis Cas. Co., 2014 WL 3807938, at *4. The only burden imposed on the insurance companies by regulation 121.33(b)(4) is "to collect and timely remit" payments

---

[10] For whatever reason, the Claimants failed to cite 1997 Pa. Laws 530 in their brief to the Court of Appeals.

made by the employer–policyholders, not to pay the assessments in the first instance or to guarantee their payment by policyholders. Our interpretation is not only consistent with the plain language of regulation 121.33(b)(4), but also the plain language of section 578 and regulations 121.22(d), 121.23(c), 121.31(e), 121.33(a)(2), and 121.33(b)(3), as well as the legislative and administrative intent of section 578 and the corresponding regulations. Neither the Pennsylvania statutes nor the administrative regulations place any penalty or fine upon the insurance companies in the event of non-payment by a policyholder. In fact, although the prior workers' compensation system required the insurance companies to pay the Pennsylvania Department of Labor and Industry even if the amount of an assessment was disputed, see 77 Pa. Stat. Ann. §§ 999(b), 1000.2(c), the Department expressly considered and rejected a similar provision when adopting the final rules and regulations which implemented section 578, see 29 Pa. Bull. 2650 (May 15, 1999) (noting the exclusion of a proposed regulation which would have provided that "[o]bjection to assessment does not relieve an insurer of its obligation to promptly pay assessment amounts imposed under the [Act]" (second alteration in original)). Finally, although the State claims that insurance companies doing business in Pennsylvania "continue to face revocation of their licenses under 77 Pa. Cons. Stat. § 997 if they fail to pay the assessments," such a penalty would be inconsistent with the plain language and intent of section 578, and, therefore, has been repealed.[11]

In summary, we conclude that the three Pennsylvania workers' compensation statutes were in fact repealed by the subsequent enactment of section 578 insofar as the statutory schemes are inconsistent. In light of the express repeal provision in 1997 Pa. Laws 530, as well as the doctrine of repeal by implication, there is simply no other way

---

[11] The State contends that section 578 "is fragmentary and vague" because it "purports to declare where the [three workers' compensation] assessments are not imposed, but neither it nor the implementing [regulations] ever effectively re-imposes them elsewhere." Although we agree that the workers' compensation system is not a model of clarity, our canons of construction and statutory analysis fully support the conclusion that the direct financial burden of paying the assessments has been removed from the insurance companies and now lies with employer–policyholders. To the extent the Pennsylvania Department of Labor and Industry may seek to enforce compliance with section 578 in the event of non-payment, we presume that the Department will first look to the insurance companies for collection and remittance of the assessments, which must be paid by the employer–policyholders. Several logical conclusions follow: (1) if the insurance company has not attempted to collect an assessment, the insurance company has neglected its statutory duty; (2) if the insurance company has collected an assessment but failed to remit payment to the Department, the insurance company has neglected its statutory duty; and (3) if the insurance company has attempted to collect an assessment but an employer–policyholder refuses to pay the assessment, the employer–policyholder has neglected its statutory duty. In short, the insurance company has the responsibility of acting as a tax collector on behalf of the Department, but the liability for payment of the assessments ultimately lies with the employer–policyholders. Of course, our courts may revisit this issue if, in the future, the Department adopts laws or practices that result in holding insurance companies financially responsible when policyholders fail to pay.

to interpret the plain language and legislative intent of section 578.  Moreover, the administrative regulations adopted by the Pennsylvania Department of Labor and Industry evince both a legislative and an administrative intent to effectuate section 578 in a manner that would avoid the imposition of retaliatory taxes.[12]  In our view, the effect of section 578 and its corresponding regulations is to relieve insurance companies of the burden to pay the three workers' compensation assessments in the first instance, substituting instead a system whereby the insurance companies are tasked with collecting and remitting the payments made by their policyholders in conjunction with their premiums.[13]  We conclude, therefore, that the Commissioner had no authority to impose a retaliatory tax upon the Claimants.  See Combs, 258 S.W.3d at 634.[14]

## IV. Conclusion

Because the three Pennsylvania workers' compensation assessments are no longer paid by the insurance companies, but are actually imposed on the employer–policyholders, the administrative task of collecting and remitting those payments does not qualify as a burden on the insurance companies for purposes of the retaliatory tax.  The judgments of the Court of Appeals are, therefore, reversed.  Costs of this appeal are taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE

---

[12] Although the State criticizes the purpose of section 578, it is not within the province of this Court to question the motives of the Pennsylvania General Assembly; we can only interpret and apply our retaliatory tax statute within the appropriate construction of the laws of other states.

[13] We have determined that the direct financial burden of paying the assessments is no longer imposed upon the insurance companies, and the State has not advanced an argument that the "administrative" burden of collecting and remitting the payment of the assessments by employer–policyholders results in an indirect financial burden upon the insurance companies.  Instead, the State asserts that "[w]ith respect to the retaliatory tax, how things stand 'at the end of the day,' quarter, or year is irrelevant."  Under these circumstances, we decline to consider whether the "ultimate economic effect" of imposing the assessments in this manner might qualify as "any fees, fines, penalties, licenses, deposit requirements or other obligations" for purposes of the retaliatory tax statute.  Tenn. Code Ann. § 56-4-218(a).

[14] Having concluded that the Pennsylvania workers' compensation assessments are not subject to the Tennessee retaliatory tax, we need not address any of the constitutional arguments raised by the Claimants.