IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2022 Session

## STATE OF TENNESSEE v. EBONY ROBINSON

**Appeal from the Criminal Court for Davidson County**
**No. 2020-D-1886    Mark J. Fishburn, Judge**

_____

### No. M2021-01539-CCA-R3-CD

_____

Defendant, Ebony Robinson, pled guilty to vehicular homicide by intoxication, aggravated assault, resisting arrest, and driving without a license. The trial court imposed an effective ten-year sentence to be served on probation with periodic confinement each year near Christmas and each victim's birthday. On appeal, the State argues that the trial court erred by granting probation because Defendant was not statutorily eligible. Following our review of the entire record, oral arguments, and briefs of the parties, we reverse the trial court's imposition of probation and remand for execution of Defendant's sentence and entry of amended judgments of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Jeffrey A. DeVasher and Emma Rae Tennent, Assistant Public Defenders (on appeal); Mary Ruth Pate, Assistant Public Defender (at trial and on appeal); and Randi Hess, Assistant Public Defender (at trial), Nashville, Tennessee, for the appellant, Ebony Robinson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Elaine Heard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The facts of this case, as set forth by the State at the guilty plea submission hearing, are as follows:

[O]n August 9th, 2020 at approximately 21:29 hours, police were called to 2400 Buena Vista Pike in regards to two minors on their bicycles being struck by a vehicle. When officers arrived on the scene, they made contact with [Defendant]. She admitted she was driving the vehicle that struck the two children. Both of the children were under ten years old. They were - - they'll be referred to as CM and CD.

This crash was on video, and [Defendant] backed up at a high rate of speed without looking and hit the two children on the bike. She was also on her cell phone. When Officer Harriman spoke with [Defendant], he immediately noticed she smelled of alcohol. He asked [Defendant] if she had been drinking that evening, and she replied that she had a few. Officer Harriman asked [Defendant] how much she had had to drink, and then she stated that she had only had a sip.

[Defendant] gave officers verbal consent to search her vehicle. They located a cup in the center console that contained what smelled like tequila. Officer Harriman asked [   ] Defendant to perform field sobriety tasks, and she started to comply. After showing signs of impairment after only a couple of the tasks, she then refused to complete anymore tasks. She then began to yell at bystanders and had to be restrained.

When officers attempted to put handcuffs on [Defendant], she became combative, ignored their commands and they had - - she had to be forcibly lowered to the ground in order to get the handcuffs on her. A check of her information revealed that she did not [have] a driver's license. She admitted to police that she did not have insurance. They read the implied consent law. She stated that she understood and signed the form.

A search warrant was obtained for her blood. Her blood came back at .08. The child, CM, died at Vanderbilt Children's Hospital that evening. The child, CD, survived, but received injuries.

The presentence report was made an exhibit at the sentencing hearing. Monique Archibald testified that CM and her son had been best friends, and CM called her "Auntie." Her son was around nine years old when CM was killed. Ms. Archibald described CM as a "very active" and "loving" child who "had a good heart." She said that he loved to interact with other children, and he was "always looking out for everybody else[.]" She further noted that CM "was a pretty good kid for the most part." Ms. Archibald testified that her son was also friends with CD. She described him similarly to CM. Ms. Archibald testified that all of the boys were "very close, very active," and they rode skateboards and bicycles together.

Valerie Robinson testified that she first had Defendant as a foster child and then formally adopted her around the age of eight. Ms. Robinson noted that she and her former husband adopted eight children, including three of Defendant's brothers. There were a total of ten children in the home. Ms. Robinson described Defendant's childhood as fun and said that the family traveled and had a family choir that Defendant participated in by playing the drums. Defendant also played basketball. Ms. Robinson noted that Defendant was missing two fingers on her right hand, which Defendant was teased about "quite a bit."

Ms. Robinson testified that Defendant was very quiet, and she did not have any behavioral or discipline issues with Defendant. She said that Defendant's birth mother, whom Defendant was allowed to visit, and one of the other adopted children passed away while Defendant was living with Ms. Robinson. Ms. Robinson testified that Defendant had some difficulty in school, "[b]ut she was able to succeed" and with tutoring "graduated a couple of months after her class graduated." She said that Defendant always had a job with various employers.

Ms. Robinson testified that Defendant "did have some drinks," and "[s]he may have gotten high sometimes." She also noted that Defendant's "relationships with different people may have encouraged a little more usage of marijuana, alcohol." Ms. Robinson testified that Defendant was married at one time, but she and her husband eventually separated. She thought a man that Defendant met later was the "main reason [Defendant] did more drinking and maybe even got into possible some other drugs[.]" Ms. Robinson testified that Defendant had two children at the time of the sentencing hearing, ages ten and six, and oldest child lived with the child's paternal grandmother, and the younger child lived with Ms. Robinson's niece. Ms. Robinson testified that Defendant had a good relationship with her children and loved them. She said that the younger child was living with Defendant at the time of the offenses.

Ms. Robinson testified that the accident was "horrible," and she noted that Defendant and CM were "very close," and she thought Defendant's youngest daughter sometimes spent time with CM. Ms. Robinson hoped that Defendant would be able to return home and "have a much better relationship with her children," and she thought that

"this experience had strengthened [Defendant's] desire to be a better mother to them." Ms. Robinson testified that Defendant had a good support system in place if she were released.

Upon questioning by the trial court, Ms. Robinson testified that Defendant usually worked through a temporary agency. When asked if there was a reason that Defendant "went through temp services rather than trying to pursue a steady long-term type of job[,]" Ms. Robinson replied: "Possibly because of the laws for marijuana being in your system."

Defendant gave a statement of allocution during which she expressed remorse and said that CM's death was an accident. She said that CM was like a nephew to her, and they were very close. Defense counsel submitted a detailed sentencing plan, which was admitted as an exhibit at the sentencing hearing. The State submitted as exhibits the video of the collision and the toxicology report, reflecting that Defendant tested positive for alcohol and marijuana following the collision.

The State filed a sentencing memorandum and argued at the sentencing hearing that Defendant was not statutorily eligible for probation or any form of alternative sentencing for her conviction for vehicular homicide by intoxication pursuant to the amendment to Tennessee Code Annotated Section 40-35-303(A), which took effect on January 1, 2017. Defendant argued that while a sentence of full probation was prohibited by Section 40-35-303(A), when read together with Section 39-13-213(A)(2) a sentence of split confinement was not prohibited in Defendant's case.

The trial court took the matter under advisement, and in a later hearing announced its findings concerning Defendant's sentence. The trial court also entered a written order containing all of its findings. The record reflects that the trial court in sentencing Defendant, considered all appropriate principles set forth in T.C.A. § 40-35-210(b). In determining the length of Defendant's sentence, the trial found three applicable enhancement factors and no mitigating factors. The court imposed a sentence of ten years for vehicular homicide by intoxication, four years for aggravated assault, six months for resisting arrest and six months for driving without a license. The trial court ordered the sentences to be served concurrently for an effective ten-year sentence as a Range I offender.

As for the manner of service of Defendant's sentence, the trial court noted that Defendant was ineligible for probation for her vehicular homicide by intoxication conviction pursuant to Tennessee Code Annotated Section 40-35-303. In its written order, the trial court pointed out:

> The Court notes there appears to be a conflict of laws in this matter and the case of State [ ] v[.] Cindy B. Hinton, No. M2020-00812-CCA-R3-CD (Tenn. Crim. [ ] App[.]) Opinion filed 7-21-21, which was submitted by the State, was "not binding precedent on the Court" and "does not think it was a finding" when the Court of

- 4 -

Criminal Appeals stated that probation was not available any longer for Vehicular Homicide by Intoxication. The Court stated that it does not believe it is necessary to look at the legislative intent of the statute, and they are presumed to know the laws that they pass. The Court finds that 40-35-303 only states no probation, but 40-35-104 lists 8 types of alternative sentencing. The Court further finds the Defendant is eligible for an alternative sentence.

Despite initially stating that Defendant was ineligible for probation, the trial court found Defendant to be an appropriate candidate for alternative sentencing and suspended her effective ten-year sentence to probation. The trial court further ordered Defendant to enter the Hope Center directly from jail, reside there for one year, and successfully complete their program with probation to be supervised out of Sumner County while Defendant resides at the Hope Center. The trial court required Defendant to petition to leave the Hope Center even if she completed the program, and then after her release from the Hope Center, Defendant was sentenced to periodic confinement of one "week in jail during each child's birthday with the birthday falling in the middle of the week, and at Christmas, from December 22-29 for the next 3 years." It is from this judgment that the State now appeals.

**ANALYSIS**

The State contends that the trial court erred by sentencing Defendant to a ten-year probationary sentence with periodic confinement for her conviction for vehicular homicide by intoxication because such sentence is excluded pursuant to Tennessee Code Annotated section 40-35-303(a). Defendant responds that while section 40-35-303(a) prohibits a sentence of full probation for her vehicular homicide conviction, when read together with section 30-13-213(b)(2)(B), she is eligible for a sentence of split confinement.[1]

Our standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, and we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -

---

[1] In her brief, Defendant states that she was sentenced to split confinement because the trial court ordered her "felony sentences to be suspended resulting in [a] sentence of split confinement since [Defendant] had been in custody since her arrest."

114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

However, issues involving statutory construction present questions of law which are reviewed de novo with no presumption of correctness. *Kampmeyer v. State*, 639 S.W.3d 21, 23 (Tenn. 2022); *State v. Keese*, 591 S.W.3d 75, 78-79 (Tenn. 2019); *State v. Gibson,* 506 S.W.3d 450, 455 (Tenn. 2016); *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015). We determine legislative intent from the plain language of the statute, "read in context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998) (quoting *State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997)). When a statute is plain and unambiguous, "we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010); *see also Keese*, 591 S.W.3d at 79. In the event of a conflict, a more specific statutory provision takes precedence over a more general provision. *State v. Welch*, 595 S.W. 3d 615, 622 (Tenn. 2020); *also Cauthern*, 967 S.W.2d at 735. "Generally, statutes are presumed to apply prospectively in the absence of clear legislative intent to the contrary." *State v. Thompson*, 151 S.W.3d 434, 442 (Tenn. 2004); *Cauthern*, 967 S.W.2d at 735. "The legislature may limit a new sentencing enactment to prospective application." *Patrick Simpson v. State,* No. 01-C-019203-CR00098, 1992 WL 335937, at *3 (Tenn. Crim. App., at Nashville, Nov. 18, 1992). Indeed, when construing a more recent statute in conjunction with pre-existing legislation, "we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments." *Davis*, 313 S.W.3d at 762; *see also Welch,* 595 S.W. 3d at 626.

In this case, Defendant pled guilty to vehicular homicide by intoxication. T.C.A. § 39-13-213(a)(2). The vehicular homicide statute provides that

> Any sentence imposed for a first violation of subdivision (a) (2) shall include a mandatory minimum sentence of forty-eight (48) hours of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire forty-eight minimum mandatory sentence.

*Id*. § 39-13-213(b)(2)(B) (Supp.2015). However, Tennessee Code Annotated Section 40-35-303(a), the probation statute, provides in pertinent part:

- 6 -

> A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; **however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2)**, § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

*Id*. § 40-35-303(a) (emphasis added). The mandatory minimum sentences to the vehicular homicide statute were added pursuant to a 2015 amendment. *See Id*. § 39-13-213 (Supp. 2015), Compiler's notes. Vehicular homicide by intoxication was added to the list of probation ineligible offense pursuant to a 2017 amendment to the probation statute. *See Id.* § 40-35-303 (Supp. 2017), Compiler's notes.

The State, relying on *State v. Stephen Jacob McKinney*, No. E2020-01730-CCA-R3-CD, 2022 WL 122867 (Tenn. Crim. App. Jan. 13, 2022), *no perm. app. filed*, argues that the trial court erred in granting Defendant a ten-year sentence on probation with periodic confinement for his vehicular homicide by intoxication conviction. In *Stephen Jacob McKinney*, as in this case, defendant argued that the trial court erred by ordering him to serve his entire eight-year sentence for vehicular homicide in confinement. More specifically, defendant asserted that "the trial court erred by not construing Tennessee Code Annotated section 40-35-303(a) in conjunction with Tennessee Code Annotated section 39-13-213(b)(2)(B), which provides that a defendant convicted of a first offense vehicular homicide by intoxication must serve a mandatory minimum sentence of forty-eight hours of incarceration before release from confinement on probation." *Id*. at *1.

In finding that defendant in *Stephen Jacob McKinney* was not eligible for probation, this court held:

> We agree with the State that the Legislature's intent to make a defendant convicted of vehicular homicide by intoxication ineligible for probation is clearly and unambiguously expressed in the language of the amendment to the probation statute, which was enacted after the amendment to the vehicular homicide statute setting forth the mandatory minimum sentences for defendants convicted of vehicular homicide by intoxication. We also agree with the State that the language in Tennessee Code Annotated section 39-13-213(b)(2) concerning the mandatory minimum sentences required before release to probation does not directly conflict with the probation statute because of its provision that any release on probation is to be pursuant to the probation statute.

The practical effect of the amendment to the probation statute, however, is that a defendant convicted of vehicular homicide by intoxication will never be eligible for release on probation. Thus, to the extent that the two statutes cannot be reconciled, we conclude that the amendment to the probation statute repeals by implication the conflicting provisions of the vehicular homicide statute concerning probation eligibility for a defendant convicted of vehicular homicide by intoxication. *See, e.g., Chartis Casualty Company v. State*, 475 S.W.3d 240, 246 (Tenn. 2015) ("Although repeal by implication is not favored ... this doctrine does apply when a more recent, more specific statute is irreconcilable with a former statute on the same subject."); *Hayes*, 288 S.W.3d at 338 (observing that a later statute will repeal by implication a prior one when the conflict between the two is inescapable). We reject the Defendant's interpretation of "release from probation" as essentially a "release on parole" as a forced interpretation that ignores the plain language of the statutes.

*Id.*, 2022 WL 122867, at *3.

We acknowledge, as pointed out by Defendant in her brief and at oral argument, that in *State v. Johnny David Key*, No. M2019-00411-CCA-R3-CD, 2019 WL 7209603 (Tenn. Crim. App. Dec. 27, 2019), a panel of this court noted that defendants convicted of vehicular homicide by intoxication are ineligible for full probation "due to statutorily imposed minimum jail terms which must be served before any potential release on probation" and that the defendant in that case "could receive, at best, a sentence of split confinement involving service of part of his sentence in jail, followed by probation or community corrections." *Id*. at *6.

However, we agree with this court's reasoning in *Stephen Jacob McKinney* that a defendant convicted of vehicular homicide by intoxication is not eligible for release on any form of probation, whether it be periodic confinement or split confinement. The probation statute plainly states that a defendant convicted of vehicular homicide by intoxication is not eligible for probation; it does not limit its application to "full probation" as argued by Defendant. Defendant's ineligibility for probation precludes her from a sentence of split confinement, periodic confinement, or any other form of alternative sentencing. *See* T.C.A. §§ 40-35-303(a), 40-35-306(a), 40-36-106(a); *State v. Smith*, 910 S.W.2d 457, 462 (Tenn. 1995); *State v. Edward Shannon Polen*, No. M2012-01811-CCA-R3-CD, 2012 WL 1354943, at *8 (Tenn. Crim. App. April 4, 2014). Therefore, the trial court in this case erred by granting Defendant probation followed by periodic confinement for her vehicular homicide by intoxication conviction.

**CONCLUSION**

After a thorough review of the record, we conclude that the trial court erred by ordering Defendant's ten-year sentence for vehicular homicide by intoxication to be served on probation with periodic confinement. We reverse the trial court's grant of probation and order execution of Defendant's sentence.

_____
JILL BARTEE AYERS, JUDGE