# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### April 22, 2016 Session

## STATE OF TENNESSEE v. STANLEY BERNARD GIBSON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2009B1143     Monte Watkins, Judge**

_____

**No. M2014-00598-SC-R11-CD – Filed November 16, 2016**

_____

The primary issue presented is whether the Drug-Free School Zone Act, Tennessee Code Annotated section 39-17-432, applies when a defendant is convicted of facilitation of an offense listed in Tennessee Code Annotated section 39-17-417. The defendant was convicted of facilitation of possession with intent to deliver .5 grams or more of cocaine within 1,000 feet of a school. The trial court applied the Act to increase the defendant's felony classification and to require service of the entire minimum sentence. The Court of Criminal Appeals affirmed the conviction and sentence. *State v. Gibson*, No. M2014-00598-CCA-R3-CD, 2015 WL 3867567, at *1 (Tenn. Crim. App. June 23, 2015). We granted review to address whether the Act applies to a conviction for facilitation and whether the evidence was sufficient to support the conviction. The State concedes the trial court erred by applying the Act to require service of the entire minimum sentence but argues the Act is a separate criminal offense and supports the higher felony classification. Based on the clear language of the Drug-Free School Zone Act, we hold the Act does not apply to a conviction for facilitation. Therefore, the trial court erred by increasing the felony classification and by requiring service of the entire minimum sentence. Further, we hold the evidence was sufficient to support the conviction for facilitation.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part**

SHARON G. LEE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. ROGER A. PAGE, J., not participating.

Richard C. Strong, Nashville, Tennessee (on appeal), and Paul J. Walwyn, Madison, Tennessee (at trial), for the appellant, Stanley Bernard Gibson.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; John H. Bledsoe, Senior Counsel; Glenn R. Funk, District Attorney General; and Antoinette Welch and John Zimmerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

I.

*Trial and Conviction*

On April 21, 2009, a Davidson County grand jury indicted Stanley Bernard Gibson for the knowing possession with intent to deliver .5 grams or more of cocaine, a Schedule II controlled substance, within 1,000 feet of a school in violation of Tennessee Code Annotated section 39-17-417 and the knowing possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony in violation of Tennessee Code Annotated section 39-17-1324(a).

When this case was tried August 12–13, 2013, Sergeant Brink Fidler with the Metropolitan Nashville Police Department ("Metro Police") testified that he had been a police officer for fifteen years, worked in the narcotics division for ten years, and served on the Twentieth Judicial District Drug Task Force for five years. On October 31, 2008, he was notified that patrol officers, responding to a burglar alarm call at 128 Cook Drive in Antioch, found there had been a forced entry to the house. No one was at home, but officers discovered over twenty pounds of marijuana in the kitchen pantry and approximately $73,000 in cash in the trunk of a vehicle in the garage.

Further investigation revealed that Fontaine Cabels lived at the Cook Drive house. His clothes and furniture were in the house, and his vehicle was in the garage. The vehicle's registration and other paperwork, including bank statements, found at the Cook Drive house listed 506 Moore Avenue as the address for Mr. Cabels. Officers learned that Tameika Scales and her child lived at the Moore Avenue house and that Mr. Cabels was the father of the unborn child of Ms. Scales's sister. About a month before the incident at the house on Cook Drive, Mr. Cabels had been arrested in Louisiana with seventy to eighty pounds of marijuana.

On November 4, 2008, Metro Police Detective Joseph Simonik, the lead detective on the case, obtained a search warrant for the Moore Avenue house based on facts uncovered in the investigation. Before the search warrant was executed, Sergeant Fidler and Drug Task Force Investigator Isaac Wood conducted surveillance of the house. Sergeant Fidler parked his vehicle across the street so he could see the front door and

glass patio door leading to the front porch. Sergeant Fidler and Investigator Wood observed a male, later identified as Mr. Gibson, seated in and also on the arm of a chair placed by the front door. They saw Mr. Gibson open the interior door and go back and forth from the house and the front porch several times. Sergeant Fidler also observed a female, later identified as Ms. Scales, talking with Mr. Gibson in the house. Sergeant Fidler saw her come in and out a few times and then leave in her vehicle.

When the search warrant was executed, Sergeant Fidler and Investigator Wood were the first to enter the house. Mr. Gibson was compliant as he was handcuffed and made to sit on the floor. During a search of the house, officers found two duffel bags on the chair by the front door where Mr. Gibson had been sitting—a blue and black duffel bag on top of the chair and a red and black duffel bag in the seat of the chair. Officers opened the bags and photographed their contents.

The red and black duffel bag contained a .44 Magnum Desert Eagle handgun, a loaded magazine for the handgun, Mr. Gibson's student identification for the International Academy of Design and Technology, garden gloves, some papers, and a notepad. The contents of the blue and black duffel bag consisted of a bag containing 1.4 grams of crack cocaine, a bag containing 7 grams of cocaine, a blue bandana, a .38 Frago Arms semi-automatic handgun, small digital scales, and some men's clothing. Detective Simonik searched Mr. Gibson and found in his pants pocket a small bag containing .04 grams of cocaine, over a hundred dollars, and a blue bandana sticking out of his back pocket. Sergeant Fidler testified that small digital scales, like those found in the blue and black duffel bag, are typically carried by a drug dealer and used to weigh narcotics during transactions. He stated that a cocaine user would usually purchase between .1 to .2 grams of cocaine at a time, known as a "twenty-rock" because it usually costs twenty dollars. The 7 grams of powder cocaine found in the blue and black duffel bag had a street value of $250 to $350, although it could be worth $700 if cooked into crack cocaine and sold to individual users. Sergeant Fidler testified that drug dealers carry weapons to protect their drugs, cash, and assets from rival drug dealers and police. Based on Sergeant Fidler's experience, the blue bandanas found in one of the duffel bags and in Mr. Gibson's pocket were "flags" and signified affiliation with the Crips gang, which is involved in dealing drugs.

No one else was in the house, and Ms. Scales and Mr. Gibson denied ownership of the weapons or drugs. No other drugs, large sums of money, or any other items associated with the drug trade were found in the house. Nothing linking Mr. Cabels to the house was found, and he had not been located by the police at the time of the search. Neither Sergeant Fidler nor Investigator Wood saw Mr. Gibson have any contact with the two duffel bags. No fingerprints were recovered from the weapons. Aside from Mr. Gibson's school identification found in one of the duffel bags and his driver's license found in the

back bedroom, officers did not locate paperwork, bills, or mail with Mr. Gibson's name on them at the Moore Avenue house.

Detective Simonik, who had been an officer for fifteen years and also served on the Drug Task Force, testified that he was at the Moore Avenue house when the search warrant was executed. As Ms. Scales returned to the house just as the search began, Detective Simonik detained her outside the house and subsequently took her into the house. In a recorded statement taken by Detective Simonik, Ms. Scales and Mr. Gibson denied knowledge of the drugs and guns found in the duffel bags. Detective Simonik arrested Mr. Gibson and took him into custody.

Tennessee Bureau of Investigation Special Agent Denotria Patterson, a forensic chemist, testified that she analyzed the items obtained during the search. She confirmed that the bag in Mr. Gibson's pocket contained .04 grams of cocaine, the large bag found in the blue and black duffel bag contained 7 grams of cocaine, and the smaller bag in the blue and black duffel bag contained 1.4 grams of cocaine base, commonly known as crack cocaine.

David Kline, manager of the Nashville Planning Department's Mapping Division, testified he used Planning Department software to determine that the house at 506 Moore Avenue was within 1,000 feet of Fall Hamilton Elementary School.

Steve Keel, School Security Operations Manager for Metropolitan-Nashville Public Schools, testified that Fall Hamilton Elementary School was in operation when the drugs were found at the house on Moore Avenue.

Mr. Gibson testified in his own defense. At the time of the arrest, Mr. Gibson and his girlfriend, Ms. Scales, had a month-old child. Mr. Gibson lived with his mother in LaVergne. He stayed with Ms. Scales at the Moore Avenue house a "couple of nights . . . every now and then" but had not stayed there the night before the search. On November 4, 2008, Ms. Scales picked up Mr. Gibson at his mother's house, and they went to the Moore Avenue house. Mr. Gibson and Ms. Scales argued, and she left the house in her vehicle. As Ms. Scales was returning, police entered the house with their guns pointed at Mr. Gibson and told him to get on the floor. While Mr. Gibson was on the floor being handcuffed, Ms. Scales came into the house saying that Mr. Gibson "wasn't the person they were looking for, Fontaine." Mr. Gibson said he "knew of" Mr. Cabels but did not "know him." Mr. Gibson knew that Ms. Scales's sister was expecting a baby by Mr. Cabels.

Officers asked Mr. Gibson for identification, and he told them he had misplaced it. Mr. Gibson said that officers told him he was not under arrest, that they were looking for

Mr. Cabels and drugs, and not to worry. Police searched the house, and as they were leaving, the officers checked the bags by the door and found the guns and drugs. Mr. Gibson testified that the lead officer took Ms. Scales outside, and another officer took Mr. Gibson to the back room. He explained that an officer pressured him "to give a name" and threatened him with prison time. Mr. Gibson admitted that when officers detained and searched him, he was carrying "a couple of hundred dollars and a little powder pack" for personal use. Mr. Gibson testified that his brother had given him the money to buy things for his baby. Mr. Gibson denied knowledge or ownership of the guns and the drugs found in the duffel bags.

Mr. Gibson admitted that on the day of the search, it is "possible" he sat on the arm of the chair while waiting for Ms. Scales to return, but he did not recall sitting in the chair or between the bags. He denied that his school identification was in one of the duffel bags and claimed that the police had "planted" it there. Mr. Gibson admitted the red and black duffel bag was his and he used it for school but stated he had left it at the house a couple of days before the search. Mr. Gibson claimed that the duffel bag did not have a gun in it when he left it at the house and suggested that someone else put the gun into the bag.

As for the bandana, when officers asked Mr. Gibson if he was a member of a gang, he responded, "Why, because of the flags you found?" Mr. Gibson testified that the street terms for bandanas are "flags" or "rags." He acknowledged that red "flags" were associated with the gang known as the Bloods and that no red "flags" were found in the house. Mr. Gibson also admitted that officers found a blue bandana in the duffel bag with the drugs and gun, and a blue bandana was in his pocket. He said he wears different bandanas to match his clothes and had "unconsciously" put the blue bandana in his back pocket. Mr. Gibson denied any of the items in the duffel bags belonged to him, denied being in a gang, denied anyone asked him to hold the guns or drugs, denied he had any reason to have a gun, and denied that Ms. Scales was selling drugs.

The jury found Mr. Gibson guilty of the lesser-included offense of facilitation of possession with intent to deliver .5 grams or more of cocaine—a Class C felony—and not guilty of the firearms charge. Because the jury found that the facilitation occurred within 1,000 feet of a school, the State argued that the Drug-Free School Zone Act applied, and Mr. Gibson should be sentenced to a Class B felony and required to serve the entire sentence. Mr. Gibson argued the Act was not applicable. The trial court applied the Act and imposed a sentence of twelve years based on a conviction of a Class B felony and required the sentence to be served at 100 percent.

Mr. Gibson appealed to the Court of Criminal Appeals, which affirmed the conviction and sentence. *Gibson*, 2015 WL 3867567, at *1. The Court of Criminal Appeals held the Drug-Free School Zone Act applied to a conviction for facilitation of any of the offenses proscribed by Tennessee Code Annotated section 39-17-417, and there was sufficient evidence to support the facilitation conviction. *Id.* at *4–5 (citing *State v. Faulkner*, No. E2006-02094-CCA-R3-CD, 2008 WL 2242531, at *16 (Tenn. Crim. App. June 2, 2008)).

We granted Mr. Gibson's application for permission to appeal and now consider whether the Act applies to a conviction for facilitation and whether the evidence is sufficient to support his conviction. The State concedes that the trial court erred by applying the Act to require service of the entire minimum sentence but argues that the Act is a separate criminal offense and supports the higher felony classification. We hold that the Drug-Free School Zone Act is not applicable to Mr. Gibson's conviction for facilitation of possession with intent to deliver .5 grams or more of cocaine within 1,000 feet of a school and that the evidence was sufficient to support the facilitation conviction.

## II.

*Application of Drug-Free School Zone Act*

To decide whether the Drug-Free School Zone Act applies to Mr. Gibson's facilitation conviction, we must interpret the language of the statute. We review issues of statutory interpretation de novo with no presumption of correctness afforded to the trial court's conclusions of law. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015); *State v. Burgins*, 464 S.W.3d 298, 305 (Tenn. 2015) (citing *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015)). The role of this Court in statutory interpretation is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute. *State v. Davis*, 484 S.W.3d 138, 144 (Tenn. 2016); *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016). To determine legislative intent, we first look to the plain language of the statute, giving the statute's words their natural and ordinary meaning. *Davis*, 484 S.W.3d at 145; *Smith*, 484 S.W.3d at 403. When those words are clear and unambiguous, we enforce the statute as written and need not consider other sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016) (citations omitted). If the language is ambiguous, however, we look to the "broader statutory scheme, the history of the legislation, or other sources to discern its meaning." *State v. Smith*, 436 S.W.3d 751, 762 (Tenn. 2014) (quoting *State v. Casper*, 297 S.W.3d 676, 683 (Tenn. 2009)); *Dycus*, 456 S.W.3d at 924. We presume that every word in the statute has meaning and purpose and should be given full effect unless it violates the obvious intent of the General Assembly.

*Dycus*, 456 S.W.3d at 924; *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010). It is not the role of this Court to substitute its own policy judgments for those of the legislature. *Frazier*, 495 S.W.3d at 249.

Here, Mr. Gibson was indicted for a Class B felony—the possession of .5 grams or more of cocaine with intent to distribute within 1,000 feet of a school. Tenn. Code Ann. § 39-17-417(a)(4), (b). He was convicted of the lesser-included charge of facilitation of possession of cocaine with intent to distribute, which is a Class C felony—the felony class next below the felony facilitated. Tenn. Code Ann. § 39-11-403(b). The Range II[1] sentence range for a Class C felony is between six and ten years, and the range for a Class B felony is between twelve and twenty years. Tenn. Code Ann. § 40-35-112(b)(2), (3).

The Tennessee General Assembly enacted the Drug-Free School Zone Act, Tennessee Code Annotated section 39-17-432, to "create drug-free zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities." Tenn. Code Ann. § 39-17-432(a). The legislature determined that the "enhanced and mandatory minimum sentences" required by the Act are necessary "to serve as a deterrent to such unacceptable conduct." *Id.* The Act provides:

> (b)(1) *A violation of § 39-17-417,*[2] *or a conspiracy to violate the section*, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school . . . *shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation. . . .*
>
> (c) Notwithstanding any other law or the sentence imposed by the court to the contrary, *a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence.* Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(b)(1), (c) (emphasis added).

---

[1] At sentencing, Mr. Gibson contested his categorization as a Range II multiple offender but does not raise it as an issue in this Court.

[2] Tennessee Code Annotated section 39-17-417 makes it an offense to knowingly possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance.

The language of the Drug-Free School Zone Act is clear and unambiguous. *Dycus*, 456 S.W.3d at 928. By its very wording, the statute applies only to a violation of, or a conspiracy to violate, Tennessee Code Annotated section 39-17-417. *See State v. Fields*, 40 S.W.3d 435, 439–40 (Tenn. 2001). "When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language." *Chartis Cas. Co. v. State*, 475 S.W.3d 240, 245 (Tenn. 2015) (quoting *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 400 (Tenn. 2013)). Facilitation is not an enumerated offense that falls within the ambit of the Drug-Free School Zone Act. *See Fields*, 40 S.W.3d at 439–40. We are not free to alter, amend, or depart from the words of the statute. *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000). The courts "must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011). We cannot add facilitation to the list of offenses subject to sentencing under the Act and extend its scope beyond the clear intent of the General Assembly. Therefore, we hold that the trial court erred in applying the Act to increase the felony classification of Mr. Gibson's facilitation conviction.

The Court of Criminal Appeals, in holding that the Act applies to a conviction for facilitation, relied on its decision in *State v. Faulkner*, 2008 WL 2242531, at *16, where the defendant was charged with selling and delivering a controlled substance within 1,000 feet of a school. The Court of Criminal Appeals ruled that the trial court did not err in instructing the jury on the lesser-included offenses of attempt and facilitation. *Faulkner* is factually distinguishable and not dispositive of the issues in this case.[3] However, the dicta in *Faulkner*, stating that the Act applies to the offense of facilitation, is inaccurate.

This Court has previously determined that the Act is an enhancement statute that applies only upon the conviction and sentencing of a defendant for violation of, or a conspiracy to violate, Tennessee Code Annotated section 39-17-417. *See Dycus*, 456 S.W.3d at 928 (citing *Fields*, 40 S.W.3d at 439; *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000)). The State argues the Act establishes a separate criminal offense classified at a higher level because a violation of Tennessee Code Annotated section 39-17-432(b) is charged as a separate offense, and the State must prove the additional element that the offense occurred within 1,000 feet of school property. The State urges this Court to overrule *State v. Smith*, 48 S.W.3d 159 (Tenn. Crim. App. 2000), *perm. app. denied* (Dec. 27, 2000), and other cases that treat the Drug-Free School Zone

---

[3] The issue of whether the Drug-Free School Zone Act applies to a conviction for attempt of any of the offenses proscribed by Tennessee Code Annotated section 39-17-417 is not presented in this case.

Act as an enhancement statute rather than one establishing a separate criminal offense.[4] We respectfully decline to do so. The State does not point to any language in the Act or to any case authority indicating that the Act establishes a separate criminal offense. Although in some states a violation of their version of the Drug-Free School Zone Act is a separate offense, those state statutes contain language that differs from Tennessee's Drug-Free School Zone Act.[5]

Mr. Gibson was indicted for a Class B felony but convicted of facilitation, a Class C felony. Tenn. Code Ann. § 39-11-403(b); *see Fields*, 40 S.W.3d at 437 (Tenn. 2001). Because the Act does not apply to a conviction for facilitation, the trial court erred in classifying Mr. Gibson's conviction for facilitation as a Class B felony and requiring 100 percent service of the sentence.

*Sufficiency of Evidence for the Facilitation Conviction*

Mr. Gibson challenges the sufficiency of the evidence to support his facilitation conviction. Tennessee Rule of Appellate Procedure 13(e) provides that "[f]indings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v.*

---

[4]*E.g.*, *State v. Santarone*, No. E2014-01551-CCA-R3-CD, 2015 WL 5766684, at *7 (Tenn. Crim. App. Oct. 1, 2015), *perm. app. denied* (Feb. 18, 2016); *State v. Carero*, No. E2015-00140-CCA-R3-CD, 2015 WL 9412836, at *4 (Tenn. Crim. App. Dec. 22, 2015), *perm. app. denied* (May 5, 2016); *State v. Duclair*, No. E2012-02580-CCA-R3-CD, 2014 WL 1663152, at *4 (Tenn. Crim. App. Apr. 23, 2014), *perm. app. denied* (Oct. 16, 2014); *State v. Johnson*, No. E2012-02246-CCA-R3-CD, 2014 WL 551954, at *6 (Tenn. Crim. App. Feb. 11, 2014); *State v. Jaimes-Garcia*, No. M2009-00891-CCA-R3-CD, 2010 WL 5343286, at *12 (Tenn. Crim. App. Dec. 22, 2010); *State v. Wiggins*, No. W2007-01734-CCA-R3-CD, 2009 WL 1362323, at *7 (Tenn. Crim. App. May 15, 2009); *State v. Carpenter*, No. E2007-02498-CCA-R3-CD, 2009 WL 331330, at *3 (Tenn. Crim. App. Feb. 11, 2009).

[5] For example, in Virginia, the statute expressly states: "Violation of this section shall constitute a separate and distinct felony." Va. Code Ann. § 18.2-255.2; *see also Commonwealth v. Burns*, 395 S.E.2d 456, 459 (Va. 1990). Maryland's statute states that "[a] person who violates this section is guilty of a felony . . . ." Md. Code Ann., Crim. Law § 5-627. In New Jersey, a person who violates the drug-free school zone act "is guilty of a crime of the third degree." N.J. Stat. Ann. § 2C:35-7. The majority of federal jurisdictions have construed the federal corollary, 21 U.S.C. § 860, as a separate offense that requires an element of proof. *See, e.g.*, *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 952–53 (8th Cir. 2001) (citations omitted) (surveying federal jurisdictions); *Spiridigliozzi v. United States*, 117 F. App'x 385, 392 (6th Cir. 2004) (citations omitted) (surveying federal jurisdictions). Subsection (a) of the federal statute is entitled "penalty," which supports a reading of the statute as creating a separate offense. *See* 21 U.S.C. § 860(a).

*Davis*, 466 S.W.3d 49, 70 (Tenn. 2015) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing the evidence in a criminal case, appellate courts must afford the State the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *State v. Thorpe*, 463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *reh'g denied, modified on other grounds* (Sept. 8, 1992)); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007)). A jury's verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt. *Davis*, 466 S.W.3d at 70 (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)); *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *Thorpe*, 463 S.W.3d at 864; *Dorantes*, 331 S.W.3d at 379 (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In cases based on circumstantial evidence, the jury decides the weight to be given to the evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379. Circumstantial evidence is sufficient to sustain a conviction even if the evidence does not "remove every reasonable hypothesis except that of guilt." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013); *Dorantes*, 331 S.W.3d at 381 (quoting *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).

Mr. Gibson argues that the police went to the Moore Avenue house looking for Mr. Cabels, whom they believed to be a drug dealer. Mr. Cabels apparently lived at a house on Cook Drive where police found a large quantity of drugs and cash; however, Mr. Cabels used 506 Moore Avenue as his address. Mr. Gibson submits that no evidence shows he was involved in activities of Mr. Cabels. During their surveillance of the Moore Avenue house, officers only saw Mr. Gibson seated on a chair inside the house, occasionally going onto the front porch to look around and returning inside the house. No one ever saw him in possession of the duffel bags. Although police found his student identification in one of the bags, Mr. Gibson testified that he had misplaced it and did not know where it was. Mr. Gibson claims that the police "planted" his student identification and the Magnum Desert Eagle handgun in his duffel bag. According to Mr. Gibson, the evidence showed that he was only a social visitor at the house and failed to show he had any connection to the drugs or gave substantial assistance to Mr. Cabels.

Under Tennessee Code Annotated section 39-11-403, "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [section]

39-11-402(2),[6] the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). A person acts knowingly

> with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(a). Facilitation requires a lesser degree of criminal responsibility than required under section 39-11-401. Tenn. Code Ann. § 39-11-403 Sentencing Comm'n cmt. A person who "facilitates" the felony conduct of another, knowingly furnishes substantial assistance, but lacks the intent to promote or assist in, or benefit from, the felony's commission. *Id.*

Viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could reasonably have found that Mr. Gibson was furnishing substantial assistance to Mr. Cabels, who was a drug dealer with a close connection to the Moore Avenue house. Mr. Cabels used the Moore Avenue house as his address, and his girlfriend's sister lived there. When he was arrested, Mr. Gibson had a small bag of cocaine and more than a hundred dollars in his pocket. He claimed that his brother had given him the money so he could buy things for his baby, but he admitted that he used some of the money to purchase the bag of cocaine found in his pocket. Just before the house was searched, Mr. Gibson was seen sitting next to the two duffel bags later found on the chair where he had been sitting. Mr. Gibson admitted the red and black duffel bag containing a handgun, a loaded magazine, and his student identification belonged to him. Sergeant Fidler testified that drug dealers carry weapons to protect their drugs and cash. He also testified that digital scales, like the set found in the blue and black duffel bag, are used in drug transactions. The blue and black duffel bag contained clothing consistent with Mr. Gibson's size and a blue bandana similar to the one found in his back pocket. Sergeant Fidler testified that blue bandanas, like those found in the blue and black duffel bag and in Mr. Gibson's pocket, can indicate membership in the Crips gang that is involved in drug dealing. Mr. Gibson admitted to knowing that the bandanas were typically associated with gangs. Although the Moore Avenue house was not Mr. Gibson's primary residence, his girlfriend lived at the house and he spent some nights there.

---

[6] Tennessee Code Annotated section 39-11-402 assigns criminal responsibility for an offense committed by the conduct of another, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2).

The jury apparently rejected Mr. Gibson's testimony that he did not know of the handguns and drugs in the duffel bags and his explanation that his student identification had been "planted" there. The jury may also have discredited his testimony that he had "unconsciously" stuck the blue bandana in his pocket and that he wears different colored bandanas to match his clothing.

Mr. Gibson's constructive possession of the cocaine in the duffel bags was sufficient to sustain his conviction for facilitation of possession with intent to distribute drugs. *See State v. Nash*, 104 S.W.3d 495 (Tenn. 2003) (holding that the evidence would sustain a conviction for facilitation where the defendant was in the back passenger seat and a brown bag of marijuana was within his reach under the front passenger seat).[7]

The jury resolves questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual disputes raised by the evidence. *State v. Willis*, No. E2012-01313-SC-DDT-DD, 2016 WL 4791743, at *71 (Tenn. July 6, 2016) (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990)). A reasonable juror could infer from Mr. Gibson's close proximity to the duffel bags, his admitted ownership of one of the bags, his student identification found in one of the bags, and his connections to the house that he knowingly provided substantial assistance to Mr. Cabels and his drug operation by possessing and safeguarding the drugs. We hold that the evidence, when viewed in the light most favorable to the State, is sufficient to sustain Mr. Gibson's conviction for facilitation of possession with intent to distribute a controlled substance.

III.

After careful review of the record, we hold that the trial court erred in applying the Drug-Free School Zone Act to Mr. Gibson's conviction for facilitation by increasing the felony classification to a Class B felony and by requiring service of the entire minimum

---

[7] *See also State v. Allen*, No. E2014-00967-CCA-R3-CD, 2015 WL 1305429, at *8 (Tenn. Crim. App. Mar. 20, 2015), *perm. app. denied* (July 20, 2015) (holding that the evidence supported a facilitation conviction where the defendant was in a bedroom and crack was found in the toilet tank, even though another individual claimed ownership of the drugs); *State v. Cross*, No. M2004-01930-CCA-R3-CD, 2005 WL 1252631, at *7 (Tenn. Crim. App. May 25, 2005) (holding that the evidence was sufficient to find defendant, who was in the bedroom where drugs, scales, plastic bags, walkie-talkies, and defendant's identification were found, knowingly furnished substantial assistance in the commission of a felony); *State v. Allgood*, No. W2008-00870-CCA-R3-CD, 2010 WL 455000, at *6 (Tenn. Crim. App. Feb. 20, 2010) (holding the evidence sufficient to sustain a facilitation conviction where defendant was found in a bathroom after flushing the toilet, drugs were found in the living room and kitchen, a bill and prescription bottles belonging to the defendant were found in the residence, and defendant admitted the drugs were his).

sentence. Further, we hold the State's evidence was sufficient to support the jury's finding of guilt on the lesser-included offense of facilitation of possession with intent to distribute a controlled substance within 1,000 feet of a school. This case is remanded to the trial court for resentencing consistent with this opinion. It appearing that Mr. Gibson is indigent, costs of this appeal are taxed to the State of Tennessee.

_____

SHARON G. LEE, JUSTICE
