FILED
10/20/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2017 Session

## STATE OF TENNESSEE v. ROBERT J. BYNUM

**Appeal from the Circuit Court for Franklin County
No. 2014-CR-126     J. Curtis Smith, Judge**

---

### No. M2016-01580-CCA-R3-CD

---

The defendant, Robert J. Bynum, appeals his Franklin County Circuit Court jury conviction of facilitation of the possession with intent to sell or deliver .5 grams or more of cocaine, challenging the sufficiency of the evidence as well as the propriety of the total effective sentence imposed for all the convictions in this case. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Christina Mincy, Chattanooga, Tennessee, for the appellant, Robert J. Bynum.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Courtney C. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant's convictions relate to the discovery of drugs following a traffic stop in Franklin County.

Just after midnight on October 31, 2013, Winchester Police Department Sergeant Troy Clark stopped a vehicle driven by David Jones for failing to stop at a stop sign. The defendant was a passenger in the vehicle. After a routine driver's license check revealed that Mr. Jones's driver's license had been revoked, Sergeant Clark placed Mr. Jones under arrest and patted him down for weapons before placing him in the back of Sergeant Clark's patrol car. Mr. Jones granted Sergeant Clark permission to search the vehicle.

As Sergeant Clark searched Mr. Jones's vehicle, Winchester Police Department Officer Dustin Elliott, who had arrived to assist Sergeant Clark, took charge of the defendant. Officer Elliott had the defendant place his hands against the vehicle and spread his legs while the officer performed "an outer clothing pat down just to see if there's any kind of bulges that would indicate possible weapons." During that initial pat down, Officer Elliott did not discern anything to cause him alarm. Afterwards, as he stood talking to the defendant while Sergeant Clark searched the vehicle, Officer Elliott noticed the defendant engaging in odd movements that led the officer "to believe that maybe there was possibly something in his pants he was trying to hide," explaining, "I noticed that he . . . was holding his pants and kind of how he was stepping, it wasn't a normal step, how somebody would normally walk."

At that point, Officer Elliott informed the defendant that he would perform a second pat down. During the second pat down, Officer Elliott noticed "a bulge that [he] didn't notice from the first pat down." When questioned about the bulge, the defendant "advised that he had something that was narcotics" and removed from his pants a "clear plastic bag" that contained eight pills later identified as dihydrocodeinone. Officer Elliott said that he did not, at any time, search inside the defendant's clothing. Upon the discovery of the pills, Sergeant Clark placed the defendant under arrest, handcuffed his hands in front of his body, and placed him into the patrol car with Mr. Jones. Sergeant Clark and Officer Elliott then continued to search Mr. Jones's car. During his search of Mr. Jones's vehicle, Sergeant Clark discovered a crack pipe in the trunk.

At the conclusion of the traffic stop, Sergeant Clark drove the defendant and Mr. Jones to the jail. Sergeant Clark parked his patrol car in the sally port area of the jail then locked the vehicle while he accompanied the defendant and Mr. Jones into the jail. Sergeant Clark confirmed that $210.00 was collected from the defendant consisting of "eight 20s, two 10s, four fives, and 10 ones." Sergeant Clark returned to his patrol car after he had obtained warrants for the arrest of Mr. Jones and the defendant. He then drove to the police department, where he searched the back seat of the patrol car, as was his custom. As part of his search, Sergeant Clark removed the back seat of his patrol car. Underneath the seat "approximately in the middle," Sergeant Clark discovered a package of what he believed to be crack cocaine. Testing performed by the Tennessee Bureau of Investigation established that the substance was 10.8 grams of crack cocaine. Sergeant Clark testified that the street value of the drugs was $2,000.00.

Sergeant Clark acknowledged at trial that he did not observe any odd or suspicious behavior from the defendant prior to or during transport. When asked whether he actually remembered searching his patrol car before the defendant's arrest, Sergeant Clark admitted that he had no independent recollection of having done so but that

-2-

inspecting his vehicle following every arrest was his habit. He insisted, "I check my vehicle after every . . . transport . . . ."

Neither the defendant nor Mr. Jones testified or offered any proof. The jury convicted the defendant as charged of simple possession of a controlled substance based upon his possession of the dihydrocodeinone tablets. The jury acquitted the defendant of the charged offense of possession with intent to sell or deliver .5 grams or more of cocaine but convicted him of the lesser included offense of facilitation of possession with intent to sell or deliver .5 grams or more of cocaine. Following a sentencing hearing, the trial court imposed a total effective sentence of five years to be served as 11 months and 29 days' incarceration followed by supervised probation.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the sufficiency of the evidence supporting his conviction of the facilitation of the possession with intent to sell or deliver .5 grams or more of cocaine as well as the propriety of the sentence.[1]

*Sufficiency*

The defendant contends that the evidence was insufficient to support his facilitation conviction because the State failed to establish more than his mere presence in an area where drugs were found. The State asserts that the evidence was sufficient to support the conviction.

Our standard of review for a claim of insufficient evidence is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.

---

[1] The defendant does not challenge his conviction of simple possession.

*Id.*

Code section 39-17-417(a)(4) provides that "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Tennessee courts recognize that possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Id.* at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing *Cooper*, 736 S.W.2d at 129). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129.

"A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." *Id.* § 39-11-403(a).

In this case, the defendant was charged with possessing the 10.8 grams of crack cocaine discovered in the back of Sergeant Clark's patrol car. The evidence adduced at trial established that Sergeant Clark arrested the defendant after Officer Elliott discovered dihydrocodeinone tablets that the defendant had secreted in the crotch of his pants. Two-hundred ten dollars in cash was collected from the defendant. Sergeant Clark placed the defendant, who was handcuffed in front of his body rather than behind due to his size, in the back of the patrol car with Mr. Jones, who had already been placed under arrest for driving on a revoked license. Sergeant Clark transported the men to the jail. After leaving the men at the jail and obtaining warrants for their arrest, Sergeant Clark went to the police department, where he performed a thorough search of his patrol car. Upon removing the back seat, Sergeant Clark discovered the cocaine underneath the seat in the middle of the seat in an area that could have been accessed by either the defendant or Mr. Jones. Although Sergeant Clark had no independent recollection of having searched the patrol car before the defendants' arrest, he adamantly maintained that such searches were part of his standard procedure, a claim bolstered by the fact that he conducted the search in this case. The defendant's presence in Mr. Jones's vehicle after midnight suggests a connection between the two men, and the discovery of another controlled substance packaged similarly as well as the collection of cash from the

-4-

defendant's person suggests that he was more than merely present in an area where drugs were found. Although the evidence was circumstantial in nature, it is our view that it was sufficient to establish that the defendant constructively possessed the cocaine discovered in Sergeant Clark's patrol car. *See State v. Gibson*, 506 S.W.3d 450, 458-60 (Tenn. 2016) ("Circumstantial evidence is sufficient to sustain a conviction even if the evidence does not 'remove every reasonable hypothesis except that of guilt.'" (quoting *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013), and citing *Dorantes*, 331 S.W.3d at 381)). Furthermore, the defendant's constructive possession of the cocaine was sufficient to support the jury's verdict of the facilitation of possession with intent to sell or deliver .5 grams or more of cocaine. *Gibson*, 506 S.W.3d at 460; *see also State v. Nash*, 104 S.W.3d 495 (Tenn. 2003) (holding that the evidence would sustain a conviction for facilitation where the defendant was in the back passenger seat and a brown bag of marijuana was within his reach under the front passenger seat).

*Sentencing*

The defendant also challenges the propriety of the five-year sentence imposed in this case, arguing that the trial court erred by failing to apply any mitigating factors.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

Here, the trial court conducted a sentencing hearing and then took the matter under advisement. In a written sentencing order, the trial court enhanced the defendant's sentence based upon his previous history of criminal convictions but found that the proof established no mitigating factors. The court set the defendant's sentence for his misdemeanor conviction of simple possession at 11 months and 29 days and the sentence for his Class C felony conviction of facilitation of the possession with intent to

sell or deliver .5 grams or more of cocaine at five years.  The court found that the defendant, because of his criminal history, was an unsuitable candidate for full probation.  Instead, the trial court imposed a sentence of split confinement, with 11 months and 29 days to be served in confinement and the balance of the sentence to be served on probation.

We need not belabor the defendant's claim that the trial court erred in its refusal to apply any mitigating factors in this case because "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005."  *Bise*, 380 S.W.3d at 706.  Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act.  To the contrary, the record reflects that the trial court considered all the relevant principles associated with sentencing when imposing the sentences in this case.  Under these circumstances, the record fully supports the defendant's within-range sentence.

*Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-