IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2018

## STATE OF TENNESSEE v. DALE MERRITT

**Appeal from the Criminal Court for Knox County**
**No. 104491   Steven Wayne Sword, Judge**

_____

### No. E2017-01200-CCA-R3-CD

_____

The Defendant, Dale Merritt, was convicted by a Knox County jury of one count of delivery of less than fifteen grams of a Schedule I controlled substance within 1,000 feet of a park and one count of delivery of less than fifteen grams of a Schedule I controlled substance within 1,000 feet of a child care agency.  The trial court merged the convictions and sentenced the Defendant to seventeen years' imprisonment.  On appeal, the Defendant argues that the evidence was insufficient to support his convictions.  After review of the record and applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Christopher M. Rodgers (on appeal) and T. Scott Jones (at trial), Knoxville, Tennessee, for the appellant, Dale Merritt.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme Allen, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

This appeal arises from the Defendant's involvement in a heroin transaction, which was observed by two undercover police officers.  The Defendant was charged with the sale of less than fifteen grams of a Schedule I controlled substance within one

thousand feet of a park, Count 1; the delivery of less than fifteen grams of a Schedule I controlled substance within one thousand feet of a park, Count 2; the sale of less than fifteen grams of a Schedule I controlled substance within one thousand feet of a child care agency, Count 3; and the delivery of less than fifteen grams of a Schedule I controlled substance within one thousand feet of a child care agency, Count 4.

Officer Philip Jinks of the Knoxville Police Department ("KPD") testified as an expert in narcotics investigations. He stated that he had received information that a female named "Jessica" was involved in heroin transactions and was driving a Toyota Camry with a missing hood on the front. On October 31, 2014, he and Officer Adam Broome of the KPD went to the area where it was believed such transactions were occurring. They intended to locate the Camry and obtain its license plate number. The officers were wearing plain clothes and were in an unmarked police vehicle. While driving in the area, they spotted a gold Toyota Camry with a missing hood that was parked in an apartment complex parking lot. They noticed a white female with dark hair, later identified as Ms. Jessica Poindexter, sitting in the driver's seat of the parked Camry. They drove past the Camry and parked about two to three spaces away.

Within one to two minutes, a gray Chevrolet Malibu pulled behind the Camry and stopped. Officer Jinks believed that the Malibu was a rental car because it appeared new, had no tint on the windows, and had "stock parts." The officers were between fifty and seventy-five feet away from the Malibu. Neither officer was able to identify the driver of the Malibu, but they both described him as an African American male with short hair who was wearing sunglasses. The officers then saw Ms. Poindexter exit the Camry and get inside the front passenger seat of the Malibu. They saw both Ms. Poindexter and the driver of the Malibu learn toward each other in the middle of the vehicle. The officers could see "their hands moving back and forth," and they believed Ms. Poindexter and the driver were "making a transaction … or some type of hand-to-hand contact." Ms. Poindexter then "immediately" exited the Malibu and walked back to the Camry. Her right hand was cupped and appeared to be holding something. As she got back into the driver's seat of the Camry, the Malibu drove away, and the officers noted the plate number and that the Malibu had a Pennsylvania license plate.

Believing a drug transaction had just occurred, the officers approached the Camry. Officer Jinks approached the driver's side while Officer Broome approached the passenger's side. Officer Jinks saw Ms. Poindexter holding a "very small plastic baggy with a pair of tweezers." He "immediately recognized" the substance in the baggy as heroin. He opened the driver's side door, identified himself, and arrested her. As he pulled her out of the car by her arm and handcuffed her, two other plastic baggies of heroin fell out of the car onto the ground. Within less than a minute of arresting Ms. Poindexter, Officer Jinks left the scene to pursue the Malibu, and Officer Broome waited

with Ms. Poindexter for backup to arrive. Officer Jinks came across a traffic accident involving injuries before he was able to locate the Malibu, and he stopped to assist with the accident. He remained at the accident scene for approximately five minutes until other officers arrived. He then went back to where he had left Officer Broome and Ms. Poindexter. He collected the three baggies of heroin and Ms. Poindexter's cellular phone.

Officer Jinks testified that as a narcotics officer, he routinely searches a suspect's vehicle to look for paraphernalia, contraband, and cash. He noted that when someone is involved in the sale and distribution of heroin, it is common to also find unused baggies, digital scales, numerous cellular phones, large amounts of cash, and firearms. He also noted that when someone is using heroin, it is common to find hypodermic syringes, "small pieces of drinking straws that are cut into about three-inch length[s]," and baggies that previously contained the drug. He stated that Ms. Poindexter's car was searched, but none of these items were found.

On cross examination, Officer Jinks acknowledged that he did not know whether Ms. Poindexter possessed the heroin prior to her arrest. He also acknowledged that Ms. Poindexter made a statement on November 13, 2014, but that her statement was not video or audio recorded.

The officers learned that the Malibu belonged to Enterprise Rental Car Company ("Enterprise"). They provided the license plate number to Enterprise, who told officers that it had been rented by the Defendant. The Defendant's rental contract with Enterprise reflected that he had rented the Malibu in question on October 24, 2014, and returned it on November 3, 2014, after it had been driven for 2,053 miles.

Once Officer Jinks knew the Defendant's name, he obtained the Defendant's Tennessee driver's license information and noted that his address was a few blocks away from where the transaction had occurred. He also obtained a photograph of the Defendant, which Ms. Poindexter identified in a photographic lineup as the man who had sold her the heroin. She did not know the Defendant's name, and instead only knew him as "Sean" or "Dboy."

Ms. Poindexter's cellular phone had a number saved under the name "Dboy." Both her cellular phone and the records obtained from her cellular service provider, T-Mobile Metro PCS ("Metro PCS"), reflected that on the day of the transaction, she had called "Dboy" at 9:49 a.m., which was about ten minutes before she was arrested. The call lasted for twenty seconds. She also received a call from "Dboy" at 10:35 a.m., which lasted for two seconds. Mr. Michael Bosillo, the records custodian at Metro PCS, explained that even if an incoming call is not answered and the caller leaves a voice mail,

the records would reflect the length of the voice mail. The records do not distinguish between an answered call and a voice mail.

Ms. Poindexter testified that she lived in the apartment complex where she was arrested and had been using heroin for several years. On the day of the transaction, Ms. Poindexter called the Defendant to purchase heroin from him. They agreed that she would receive three baggies of heroin and that he would bring the heroin to her, which was consistent with the way she had purchased heroin from him in the past. She waited in her car in the parking lot until the Defendant pulled up behind her. She sat in his car and exchanged $60 for the heroin, which took a "[c]ouple of minutes." She then went back to her car and opened one of the baggies. The officers appeared at that time and placed her under arrest. She refused to speak with police when she was arrested.

After Ms. Poindexter was charged, she agreed to cooperate with the police in exchange for a guilty plea to simple possession, which she acknowledged was "considerably less serious" than her original charge. By pleading to simple possession, Ms. Poindexter also avoided a felony conviction. She was in jail for about two or three weeks after she was arrested, but she did not serve any additional jail time as part of her sentence. As part of the agreement, she had to testify against the Defendant at trial, seek treatment for her drug addiction, and discontinue her drug use. She acknowledged that she identified the Defendant in the photographic lineup, and she also identified him at trial. She stated that she only knew the Defendant as "Sean" and "Dboy" and did not learn the Defendant's name until after she had identified his photograph. She maintained that she had never sold heroin to the Defendant or anyone else.

On cross examination, Ms. Poindexter was asked about a series of text messages on her cellular phone at the time she was arrested. On October 29, 2014, she received a message from her boyfriend at the time that said, "Are you coming straight home [be]cause [S]haggy [is] wanting to bring some girl to get dope[?]" Ms. Poindexter replied, "I know[.] I hope she still wants it[.] [I']ll be home in like forty." Ms. Poindexter acknowledged that "dope" was another term for heroin but denied that these messages referred to a drug transaction. When asked if she was going to "hang out" with the girl mentioned in the message, she replied, "Probably, yes." Ms. Poindexter acknowledged that she was not employed during October of 2014 but denied that the money she used to purchase heroin came from her own sales to other people.

The Defendant elected not to present any evidence. The State and defense stipulated that the Tennessee Bureau of Investigation tested the substance from the three baggies seized from Ms. Poindexter and concluded that the substance was heroin, a Schedule I controlled substance, and weighed .27 grams. They also stipulated that the

location of the alleged offense was within 1,000 feet of a city park and a child care agency.

The jury found the Defendant guilty in Count 2 for the delivery of less than fifteen grams of a Schedule I controlled substance within one thousand feet of a park and in Count 4 for the delivery of less than fifteen grams of a Schedule I controlled substance within one thousand feet of a child care agency. The jury found the Defendant not guilty in the remaining charges. The court merged Count 4 into Count 2 and sentenced the Defendant as a Range II, multiple offender to seventeen years, twelve years of which was statutorily mandated to be served at one hundred percent. *See* T.C.A. § 39-17-432(b)(2), (c). The Defendant timely appeals.

**ANALYSIS**

The Defendant argues on appeal that the evidence presented at trial was insufficient to sustain his convictions and that his convictions were based on uncorroborated accomplice testimony. He specifically argues that the evidence was insufficient because Ms. Poindexter was the only person who could identify the Defendant as the driver of the Malibu and because neither police officer saw what occurred inside the Malibu.

When a defendant challenges the sufficiency of the evidence, this court must determine whether the evidence is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court examines the relevant statute to determine the essential elements for the offense and analyzes the evidence admitted at trial to determine whether each element is adequately supported. *State v. Stephens*, 521 S.W.3d 718, 723-24 (Tenn. 2017) (citations omitted). The court determines "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The standard of review remains the same regardless of whether the conviction is based upon direct or circumstantial evidence. *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). "'[T]he State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.'" *Id.* (quoting *State v. Harris*, 839 S.W.2d 54, 75 (1992)). This court does not reweigh the evidence. *Id.* (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). Instead, "'a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts' in the testimony in favor of the State." *Id.* (quoting *Harris*, 839 S.W.2d at 75). The conviction replaces the presumption of innocence with a

presumption of guilt. *Id.* (citing *Evans*, 838 S.W.2d at 191). On appeal, the defendant has the burden of demonstrating why the evidence is insufficient to support the verdict. *Id.* (citing *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982)).

The Defendant was convicted of two counts of delivery of less than fifteen grams of a Schedule I controlled substance, with one count being within 1,000 feet of a park and the other count being within 1,000 feet of a child care agency. Tennessee Code Annotated section 39-17-417 provides that a defendant commits an offense when he knowingly delivers a controlled substance. T.C.A. § 39-17-417(a)(2). The delivery of a Schedule I controlled substance, such as heroin, is a Class B felony. T.C.A. § 39-17-417(b). A violation of section 39-17-417 occurs within a drug-free zone when such offense occurs "within one thousand feet (1,000') of the real property that comprises a … child care agency … or park." T.C.A. § 39-17-432(b)(1).

When the State presents testimony from an accomplice at trial, "[t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity." *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994) (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Such corroborative testimony need not be adequate to support a conviction on its own and may be direct or entirely circumstantial. *Id.* The corroborating evidence is sufficient if it "'tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.'" *Id.* (quoting *Gaylor*, 862 S.W.2d at 552).

Identity is an essential element of any crime. *State v. Bell*, 512 S.W.3d 167, (Tenn. 2015). Identity may be established with circumstantial evidence alone. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). "[T]he evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *Dorantes*, 331 S.W.3d at 380-81). The jury determines the weight to be given, and inferences to be drawn from, circumstantial evidence. *State v. Gibson*, 506 S.W.3d 450, 458 (Tenn. 2016) (citing *Dorantes*, 331 S.W.3d 379). In resolving questions of fact, such as the identity of the perpetrator, "'the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)).

The facts stipulated at trial provided that the substance possessed by Ms. Poindexter was .27 grams of heroin and that the incident occurred within 1,000 feet of a

park and a child care agency. The Defendant maintains that the evidence did not establish his identity as the perpetrator, nor did it establish that he delivered the heroin to Ms. Poindexter. He argues that the officers did not see what actually happened inside the Malibu and that Ms. Poindexter's uncorroborated identification of the Defendant cannot support his convictions.

In the light most favorable to the State, the proof established that Ms. Poindexter identified the Defendant, both in a photographic lineup and at trial, as the man who sold her three baggies of heroin. She testified that she called the Defendant, whom she knew as "Dboy" or "Sean," on October 31, 2014, and arranged for him to bring her three baggies of heroin. This was corroborated by Ms. Poindexter's cellular phone records, which reflected an outgoing phone call to "Dboy" ten minutes before she was arrested. Additionally, Officer Jinks and Officer Broome testified that they observed Ms. Poindexter get into a gray Malibu, engage in what appeared to the officers as a "transaction" or "hand-to-hand contact," and exit the Malibu. Upon approaching Ms. Poindexter immediately after she returned to her car, Officer Jinks saw that Ms. Poindexter was holding an open baggie of heroin and a pair of tweezers. The officers also noted the Pennsylvania license plate and plate number on the Malibu, and Enterprise's records showed that the Defendant had rented that specific vehicle on October 24, 2014, and returned it on November 3, 2014. Although the Defendant argues that the evidence was insufficient because only Ms. Poindexter could identify the Defendant and testify regarding what occurred inside the Malibu, evidence corroborating her testimony only needs to connect the Defendant to the offense and does not need to support the convictions on its own. *See Bigbee*, 885 S.W.2d at 803. Accordingly, we conclude that the evidence presented corroborated Ms. Poindexter's testimony and was sufficient to support the Defendant's identity as the perpetrator.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

- 7 -